**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**THE AMYOTROPHIC LATERAL
SCLEROSIS ASSOCIATION,**

                **Plaintiff(s),**        **CASE NUMBER: 05-73464
HONORABLE VICTORIA A. ROBERTS**

**v.**

**AMYOTROPHIC LATERAL
SCLEROSIS OF MICHIGAN, INC.,
AND ALS OF MICHIGAN FOUNDATION,
INC.,**

                **Defendant(s).**
_____/

## ORDER

## I.    INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.  The Court denied the motion for a temporary restraining order on September 9, 2005, but permitted the parties to engage in limited discovery.  An evidentiary hearing was held on November 8, 2005.

For the reasons stated below, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## II.    BACKGROUND

Plaintiff Amyotrophic Lateral Sclerosis Association ("ALSA") seeks to enjoin several actions by Defendants Amyotrophic Lateral Sclerosis of Michigan, Inc. ("ALS of Michigan") and ALS of Michigan Foundation ("ALS Foundation").  ALSA is a national

1

non-profit organization dedicated to the fight against amyotrophic lateral sclerosis, commonly referred to as "Lou Gehrig's Disease." Defendant ALS of Michigan is a chapter of ALSA located in Southfield, Michigan. Defendant ALS Foundation is an organization formed by ALS of Michigan.

ALS of Michigan entered into a Chapter Affiliation Agreement ("the Agreement") with ALSA in 1990. The Agreement allows ALS of Michigan to operate as a Chapter of ALSA under certain terms and conditions. During 2003 and 2004, ALSA and ALS of Michigan disputed whether ALS of Michigan complied with its financial obligations under the Agreement. ALSA alleges that ALS of Michigan failed to remit over $800,000 due under the contract. The Agreement requires mandatory arbitration of disputes in either Michigan or Los Angeles. ALS of Michigan filed an arbitration demand with the American Arbitration Association in Southfield, Michigan on March 7, 2005. ALSA filed its own arbitration demand in Los Angeles, California on March 11, 2005 and objected to the hearing in Michigan.

ALS of Michigan claimed in its arbitration demand that ALSA failed to fulfill its obligations under Article V of the Agreement, which addresses the coordination and support ALSA is to provide chapters such as ALS of Michigan. *See* Complaint, ¶17. On the other hand, ALSA alleged in its demand that ALS of Michigan failed to make the required payments under the Agreement and failed to comply with ALSA guidelines, *e.g.,* revenue sharing from fund-raising events. *See* Complaint, ¶18. The arbitration proceedings are pending. ALSA requests that the Court grant interim injunctive relief because of several alleged acts by ALS of Michigan in violation of the Agreement.

2

First, ALSA alleges that ALS of Michigan held two fund-raising events which violated the Agreement and infringed upon ALSA's trademarks.  The parties rely heavily on fund-raising.  The principal community relations and fund-raising event for ALSA and its Chapters is the "Walk to D'Feet ALS."  ALSA has secured trademark protection in two logos--"ALS"[1] and "Walk to D'Feet ALS" (hereinafter "Walk to D'Feet")--in the United States and Canada.   Paragraph 1.3 of the Agreement only permits Chapters that are in good standing to use the ALS logo.[2]  The Walk to D'Feet logo may only be used in accordance with uniform requirements set forth in a separate contract called the "Memorandum of Agreement" (hereinafter "the Memorandum").  The Memorandum details each Chapter's obligations for staging the walks and the support ALSA will provide.   Annually, each ALSA Chapter must indicate its compliance with the Memorandum requirements.

ALS of Michigan signed the Memorandum for the 2002 and 2003 years, but refused to do so for 2005.  On February 28, 2005, ALSA's President, Gary Leo, sent a letter to ALS of Michigan's Board President, Paul Schapira, inquiring about the Chapter's failure to sign and return the Memorandum by the January 31, 2005 deadline.  Leo warned that the Chapter would not be permitted to hold a Walk to D'Feet event unless it signed the Memorandum:

---

[1]ALSA says that it owns the mark "ALSA," but the documentation attached actually indicates that the mark is "ALS."  Therefore, it will hereafter be referred to as "ALS."

[2]Paragraph 1.3 states in relevant part: "The Chapter has the right to use the [ALS] logo in its chartered area as long as it remains a Chapter of ALSA in good standing."  Def. Exh. 3.

3

The Community Services Committee recently confirmed that all chapters must execute [the Memorandum] in order to take part in the Walk to D'Feet Program.  This letter is to advise you that ALS of Michigan, Inc., now has five business days from receipt of this letter to comply with this written and final request to return the fully executed agreement.

**If the [Memorandum] is not received by March 8th, ALS of Michigan, Inc. *shall no longer* be entitled to hold any Walks to D'Feet ALS® in fiscal year 2006.**  As per the decision of the Community Services Committee, the following conditions which apply to any chapters who chose not to execute the [Memorandum] shall be in effect:

- **The chapter is prohibited from using the registered name Walk to D'Feet ALS® and all collateral materials**;
- The ALS Association will remove all links regarding the Walk to D'Feet ALS® from the ALSA website to the local chapter website;
- The chapter may not utilize any Walk to D'Feet ALS® materials created by ALSA for any on-line Walk to D'Feet ALS® fundraising activities; [and]
- ALSA may exercise its right to plan and host a nationally sponsored Walk to D'Feet ALS® within the chapter service area.

Pl. Exh. 9 (emphasis added).

Despite this letter, ALS of Michigan did not sign the 2005 Memorandum. Nevertheless, ALS of Michigan Executive Director Susan Burstein-Kahn testified that the Chapter believed that it was not prohibited from holding a Walk to D'Feet event; the Chapter had declined to sign the Memorandum in 2004 as well, but still held two Walk to D'Feet events.  So, the Chapter held a Walk to D'Feet event on June 25, 2005 in Jackson, Michigan, and scheduled another on September 18, 2005 at Kensington Metro Park in Milford, Michigan.  The ALS of Michigan website, www.alsofmi.org, indicated that two others were also scheduled on September 18, 2005 in Jackson, Michigan and

4

at Stony Creek Metro Park in Shelby Township, Michigan.  However, the parties only refer to the event at Kensington.

On August 3, 2005, ALSA sent a letter to ALS of Michigan's counsel demanding that it cease and desist in the unauthorized use of ALSA's trademarks:

> [ALS of Michigan] is hereby advised to immediately cease and desist all such promotion of the Walk event, and is hereby advised not to use any of the National Association's trademarks, logos or promotions in connection with a charitable Walk event without having signed the required agreement.

Pl. Exh. 4.  In response, ALS of Michigan modified its promotion and held the September event as the "Walk 'N Roll for ALS" (hereinafter "Walk 'N Roll").  However, in its promotion and event materials, ALS of Michigan continued to use the ALS logo along with the Walk 'N Roll logo.

ALSA argues that: 1) ALS of Michigan's use of the ALS and Walk to D'Feet logos in its June fund-raiser constituted breach of contract and trademark infringement; 2) ALS of Michigan's contemporaneous use of the ALS logo with the Walk 'N Roll logo during its September fund-raiser gave the false impression that ALSA sponsored the event; and 3) ALS of Michigan is not authorized to promote walk events using other logos.  In its pleadings, ALSA also argued that the "Walk 'N Roll" logo is confusingly similar to ALSA's "Walk to D'Feet" logo.  But, ALSA did not assert this argument during the evidentiary hearing and presumably abandoned it.

ALSA requests that the Court enjoin ALS of Michigan from 1) using the ALS logo contemporaneously with the Walk 'N Roll logo, and 2) using the Walk to D'Feet logo.  ALSA also requested that ALS of Michigan be enjoined from using the ALS logo at all, but withdrew this request at oral argument.

5

ALSA's second claim is that ALS of Michigan solicited patients and donors from western Michigan, which is outside its territory.  ALS of Michigan's territory is the eastern and northern portion of Michigan.  Western Michigan and the Upper Peninsula are covered by the Western Michigan Chapter, headquartered in Grand Rapids, Michigan.  Thomas Farley, Executive Director of the Western Michigan Chapter, testified that continued erosion of its patient base because of ALS of Michigan's alleged encroachment on western Michigan territory will force his Chapter out of business.  Therefore, ALSA requests that the Court enjoin ALS of Michigan from continuing to solicit outside its territory.

Lastly, ALSA contends that there is reason to believe that ALS of Michigan formed the ALS Foundation because it intends to transfer its assets and activities to the new entity in violation of the Agreement, which requires that "[t]he purpose, objectives and business of The Chapter . . . be conducted under the name of ALS of Michigan."  Pl. Exh. 2 at ¶1.2.  ALSA believes that ALS of Michigan so intends because: 1) ALS Foundation was formed without ALSA's permission or knowledge; 2) ALS of Michigan met with a "dysfunctional" Chapter in Nevada which already attempted to transfer its assets away;[3] 3) Ms. Burstein-Kahn testified that she would consider disaffiliating ALS of Michigan from ALSA, although she denies that there is a present plan to do so; and 4) ALS of Michigan's Board indicated in a March 5, 2005 strategic planning memo that it

---

[3]At the time of the hearing in this matter, the Superior Court of California had entered an Order to Show Cause for Preliminary Injunction and a Temporary Restraining Order against the Nevada Chapter of ALSA and ALS of Nevada.  A hearing was scheduled, but the outcome of that hearing and the current status of the matter is not known.

intends to service the entire state. ALSA argues that these facts strongly suggest that ALS of Michigan is likely to follow the example of the Nevada Chapter. Therefore, ALSA requests that the Court enjoin ALS of Michigan from transferring its assets to the ALS Foundation or any other entity.

ALSA filed a seven-count complaint alleging: "Aid of Federal Arbitration Act" (Count I),[4] breach of contract (Count II), infringement of registered trademark and violation of Section 32 of the Lanham Act, 15 U.S.C. §1114 (Count III), unfair competition and false designation of origin or sponsorship under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) (Count IV), common law unfair competition (Count V), dilution of trademark under Section 43(c) of the Lanham Act, 15 U.S.C. §1125 (Count VI), and constructive trust (Count VII).

This preliminary injunction request is based on ALS of Michigan's alleged breach of contract and trademark infringement.

## III.    APPLICABLE LAW AND ANALYSIS

When deciding a motion for preliminary injunction, a district court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998, *cert den.*, 526 U.S. 1087 (1999). No single factor is dispositive. The court must balance each factor to determine whether they weigh in favor of an injunction. *Id.*

---

[4]In this Count, ALSA requests that the Court preserve the status quo until the arbitration proceedings are complete.

The Court may enter a preliminary injunction in this matter even though the parties have agreed to resolve their disputes in arbitration. *See Performance Unlimited, Inc. v Questar Publishers, Inc.,* 52 F.3d 1373, 1380 (6th Cir. 1995)("[I]t is settled that "in a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under §3 of the Act to grant preliminary injunctive relief provided that the party seeking the relief satisfies the four criteria which are prerequisites to the grant of such relief.").  Granting injunctive relief is particularly appropriate when failing to do so "would render the process of arbitration meaningless or a hollow formality." *Id.*

## A.   LIKELIHOOD OF SUCCESS ON THE MERITS

### i.   Breach of Contract and Trademark Infringement Claims

ALSA asserts that ALS of Michigan's unauthorized use of the "ALS" and "Walk to D'Feet" logos during a June 2005 fund-raiser constituted breach of contract and trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1), which states:

> **(1)** Any person who shall, without the consent of the registrant--
>
> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

8

> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

ALSA also alleges that ALS of Michigan's use of the Walk 'N Roll mark during the September 2005 fund-raiser constituted breach of contract and false designation of sponsorship, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), which states:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

ALSA's breach of contract and trademark infringement claims converge because ALSA cannot establish trademark infringement without first establishing a breach of contract. This interdependence stems from the fact that ALS of Michigan contends that it is allowed under the provisions of the Agreement to use the trademarks at issue. Therefore, for each fund-raising event held, the Court must consider two questions: 1) whether the contract permitted ALS of Michigan's use of ALSA's trademarks, and 2)  if

9

not, whether ALS of Michigan's use constituted trademark infringement.

### i.    June Fund-Raiser

ALSA has not established that ALS of Michigan's use of the ALS logo during the June fund-raiser breached the Agreement.  Paragraph 1.3 of the Chapter Affiliation Agreement permits a Chapter to use the ALS logo as long as it is in good standing.  Although ALSA asserts that ALS of Michigan was not in good standing when it held the June event, there is no evidence to support the assertion.  The letter sent to ALS of Michigan's attorney stating that it was not in good standing was not sent until after the June fund-raiser, on August 12, 2005.  And, Gary Leo testified that he did not know if any prior notice was sent.  Nor could he give the date that the determination was made that ALS of Michigan was not in good standing.  Therefore, there is no evidence that ALSA even determined that ALS of Michigan was not in good standing prior to the June event.  Consequently, the Court must presume that ALS of Michigan was in good standing and, therefore, was permitted under the Agreement to use the ALS logo.

However, the Memorandum placed greater restrictions on ALS of Michigan in terms of its use of the Walk to D'Feet logo.  ALS of Michigan admits that it held the June fund-raiser using the ALS and Walk to D'Feet trademarks, even though it did not execute a 2005 Memorandum. The Walk to D'Feet mark is a registered trademark owned by ALSA.  ALS of Michigan does not direct the Court to any authority or any provision of the Agreement which prohibits ALSA from regulating and restricting the use of the Walk to D'Feet mark in the manner set forth in the Memorandum.

ALS of Michigan correctly points out that ALSA's June 10, 2003 letter to all of the Chapters granted the Chapters a royalty-free license to use certain marks, including

10

Walk to D'Feet.  *See* Def. Exhs. 6 and 7.  However, the June letter also states that the condition for use of the marks is that they be used "in accordance with the guidelines set forth by The ALS Association."  Def. Exh. 6, p. 2.  These are set forth in the annual Memorandum and includes the requirement that each Chapter sign the Memorandum to indicate its agreement to comply.  ALS of Michigan points out that it refused to sign the Memorandum for 2004 but, nevertheless, held a Walk to D'Feet event without retribution.

Ms. Burstein-Kahn testified that because of this, the Chapter believed it was not prohibited from holding a Walk to D'Feet despite its failure to execute the Memorandum. Ms. Burstein-Kahn's claim is belied, however, by the February 28, 2005 letter from ALSA indicating its intention not to allow this practice to continue:

> **If the [Memorandum] is not received by March 8th, ALS of Michigan, Inc. *shall no longer* be entitled to hold any Walks to D'Feet ALS® in fiscal year 2006.**  As per the decision of the Community Services Committee, the following conditions which apply to any chapters who chose not to execute the [Memorandum] shall be in effect:
>
> > • **The chapter is prohibited from using the registered name Walk to D'Feet ALS® and all collateral materials**

Pl. Exh. 9 (emphasis added).

For all of these reasons, the Court finds that ALSA established a likelihood of success on its claim that ALS of Michigan's use of Walk to D'Feet during the June event constituted a breach of contract.

Because ALS of Michigan was not authorized to use the Walk to D'Feet mark, ALSA also established a colorable claim of infringement under §1114 of the Lanham

11

Act.  "The Lanham Act prohibits the unauthorized use of a registered trademark when selling or advertising a good or service using the trademark is likely to confuse or deceive consumers."  *U.S. Structures, Inc. v J.P. Structures, Inc.,* 130 F.3d 1185, 1188 (6th Cir. 1997).  "The touchstone of liability under §1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties."  *Daddy's Junky Music*, 109 F.3d at 280.  Typically, the Court must consider eight factors in assessing the likelihood of confusion: (1) the strength of plaintiff's mark; (2) the relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care and sophistication; (7) intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines using the marks.  *Daddy's Junky Music Stores*, 109 F.3d at 280.

But this is not a typical case.  When a defendant--as is alleged here--continues to use a trademark after permission is withdrawn or terminated, consideration of the eight factors is not necessary.

In *U.S. Structures, Inc. v J.P. Structures, Inc.,* 130 F.3d 1185 (6th Cir. 1997), plaintiff brought claims under §1114 and §1125(a) because defendants continued to use plaintiff's trademark after defendants' franchise agreement was terminated.  The district court granted summary judgment to plaintiff on both claims.  Defendants appealed arguing, *inter alia*, that the court failed to consider the eight factors for likelihood of confusion individually.  The Sixth Circuit declined to reverse on this ground.  The Court's reasoning was that plaintiff's claim was distinguishable from one involving imitation of a registered trademark.  The Court found that plaintiff's theory was that defendants'

12

continued use of its trademark after the franchise was cancelled falsely suggested that defendants' business was still affiliated with plaintiff's.  Under this circumstance, the Court implicitly agreed that a different analysis applies:

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. A patron of a restaurant adorned with the Burger King trademark undoubtedly would believe that [Plaintiff] endorses the operation of the restaurant. Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore would be attributed to [Plaintiff]. Because of this risk, many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement.

130 F.3d at 1190 (*quoting Burger King*, 710 F.2d at 1492-1493 (11th Cir. 1983)).

Following *Burger King,* the Court stated that "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'"  *U.S. Structures,* 130 F.3d at 1190.


The Court finds that ALS of Michigan's continued use of the Walk to D'Feet mark -- despite its failure to renew the annual "license" -- is analogous to the situation in *U.S. Structures*, satisfies the likelihood of confusion test, and constitutes trademark infringement.  Therefore, ALSA established a likelihood of success on its claim that ALS of Michigan's use of the Walk to D'Feet logo during the June event constituted trademark infringement.

### ii.   September Fund-Raiser

ALSA contends that there is a likelihood of success on its contract and infringement claims relative to Defendant's September Walk 'N Roll fund-raiser

13

because: 1) ALS of Michigan is not authorized to conduct a walk event under any name other than Walk to D'Feet, and 2) Defendant's use of the ALS logo contemporaneously with the Walk 'N Roll mark constituted false designation.

There is no apparent basis for ALSA's first assertion--that ALS of Michigan was not authorized to conduct a walk event under any name other than Walk to D'Feet. Except for the limitations in the Agreement and Memorandum relative to ALSA's trademarks, there is no evidence that Chapters are limited in the type of fund-raisers they are allowed to conduct or the name fund-raisers may be given.  The Agreement simply states that Chapters are to conduct "vigorous and independent" fund-raising campaigns.  *See* Pl. Exh. 2 at ¶3.2.  And, ALSA failed to present other evidence that walk fund-raisers are prohibited when held under a name other than Walk to D'Feet. Therefore, ALSA failed to establish a likelihood of success on this breach of contract claim.

ALSA established a likelihood of success on its second claim--that ALS of Michigan's use of the ALS logo along with the Walk 'N Roll logo constituted breach of contract and trademark infringement.  ALSA asserts that Defendant was not in good standing in September 2005 and, therefore, was not permitted under the Agreement to use the ALS logo.  It is true that ALS of Michigan was on notice prior to the September event that ALSA deemed the Chapter to be not in good standing.  On August 12, 2005, ALSA explicitly stated in a letter to ALS of Michigan's attorney that use of the ALS logo is only permitted by Chapters in good standing, and that ALS of Michigan was no longer in good standing.  Pl. Reply. Exh. 4.

14

However, ALS of Michigan disputes the validity of ALSA's change of its status because the Agreement does not define good standing or set out the circumstance or procedure for ALSA to impose such a designation, or for a Chapter to contest it.  Gary Leo testified that breach of the Agreement may be grounds to find that a Chapter is not in good standing.  But, he also admitted several instances in which other Chapters were in breach of the Agreement but were still in good standing.  Therefore, ALS of Michigan contends that ALSA's change of its status was arbitrary and deprived ALS of Michigan of due process.

The parties did not address whether the Court can or must review the merits of ALSA's decision.  Michigan prohibits judicial review of the decisionmaking of private associations "[w]here the association provides a speedy and effective means of deciding controversies before it and where there is no evidence of fraud or oppression by the association against the complaining member."  *James v Midland County Agricultural and Horticultural Society*, 107 Mich. App. 1, 7 (1981).  "Courts have no business regulating the procedures of private associations absent a compelling showing that substantial rights of a member are implicated and that there is no reasonable opportunity for the member to effectively assert those rights within the confines of the group."  *Christensen v Michigan State Youth Soccer Association, Inc.,* 218 Mich. App. 37, 40 (1996).  And, the only due process members of private associations are entitled to is that provided for in the association's rules and bylaws.  *Id* at 41.  "There is no provision of law that imposes upon private associations the same panoply of procedural rules imposed on public entities by the Due Process Clause of [the Fourteenth Amendment]."  *Id* at 42.

15

Arguably ALS of Michigan has made "a compelling showing that substantial rights" are at issue and that there is "no reasonable opportunity for it to effectively assert those rights. *Christensen,* 218 Mich. App. 37, 40 (1996). The parties agree that the ability to raise funds is critical to the success of a Chapter. And, it is reasonable to assume that ALS of Michigan's ability to raise funds would be significantly impaired if it were not permitted to do so as a Chapter in good standing. Yet, the Agreement does not include specific procedural rules for challenging change of status decisions by ALSA. And, it only provides that conflicts are to be resolved by arbitration. It does not appear that Michigan courts have addressed whether arbitration is considered a "speedy and effective means of deciding controversies" such that judicial review is precluded, nor is there any guiding circuit court authority.

The Court accepts ALSA's determination that ALS of Michigan was not in good standing, and finds that ALSA established breach of contract and false designation. ALS of Michigan was notified in the August 12, 2005 letter from ALSA that it was not in good standing. Therefore, ALS of Michigan's use of the ALS logo in its advertising for the September event was a clear breach of paragraph 1.3 of the Agreement. Consequently, ALSA also has a colorable claim of false designation.

A false designation claim under §1125(a) requires that a plaintiff establish two elements: "(1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion." *Johnson v Jones*, 149 F.3d 494, 502 (6th Cir. 1998). However, like §1114 claims, likelihood of confusion is the critical element of a §1125(a) claim. *Id*; *Chain v Tropodyne Corp.,* 255 F.3d 659, *3 (6th Cir. 2000)(unpub. op.).

16

The interstate commerce element is met. ALSA is a Delaware corporation that is based in California.  The ALS logo is a nationally used trademark which ALSA claims was damaged by ALS of Michigan's unauthorized use of it in conjunction with its September walk event.  *See Mother Waddles Perpetual Mission, Inc. v Frazier,* 904 F.Supp. 604, 611 (E.D. Mich. 1995)("[E]ven if the infringer's business is maintained within one state, where the trademark owner's business is interstate and he alleges damage to the mark, the interstate commerce requirement is met.").  Under *U.S. Structures*, *supra,* ALSA also established likelihood of confusion because ALS of Michigan continued to use the ALS mark although permission was withdrawn by virtue of the change of status.  *See U.S. Structures,* 130 F.3d at 1190.

### ii.   Encroachment of Territory

Paragraph 1.2 of the Agreement states that "[t]he Chapter agrees to conduct all of its activities throughout its designated territory . . . ."  Paragraph 3.1 prohibits ALS of Michigan from engaging in organized solicitation of donations outside its territory.  ALSA says that ALS of Michigan violated these provisions in a number of ways: 1) Ms. Burstein-Kahn admittedly conducted a seminar in Lansing, which is outside the Chapter's territory; 2) ALS of Michigan lists a number of western Michigan residents that it serves; and 3) according to Farley, ALS of Michigan solicited donations from patients and families living in western Michigan.

None of these alleged acts proves, even *prima facie*, that ALS of Michigan solicited donations or patients outside its territory.  ALSA bases its claim solely on hearsay testimony from Farley that patients received literature or services from ALS of Michigan and that patients were solicited to give donations to ALS of Michigan.

17

Hearsay testimony, however, is insufficient to carry ALSA's burden.

ALSA also has not presented any evidence that the patients ALS of Michigan serves who live outside of its territory were improperly solicited. And, neither paragraph 1.2 nor 3.1 of the Agreement requires ALS of Michigan to turn away patients from western Michigan who seek its services.

ALSA has not established a likelihood of success on this claim.

### iii.   ALS Foundation

ALSA cites a number of reasons why it believes that ALS of Michigan intends to form a rival organization and abscond with assets belonging to ALSA. Specifically: 1) the Articles of Incorporation for ALS Foundation indicates that it was formed, "[t]o receive and administer funds for the support of people with ALS and their families;" 2) ALS Foundation was formed without ALSA's permission or knowledge; 3) Defendant has met with a Chapter in Nevada that allegedly already attempted to transfer its assets away; 4) Ms. Burstein-Kahn did not rule out the possibility of disaffiliating ALS of Michigan from ALSA; and 5) ALS of Michigan board members indicated in a strategic planning document dated March 5, 2005 that one of the Chapter's objectives is to provide services to the entire state of Michigan.

Regardless of whether ALSA's suspicions are justified, ALSA has not presented evidence that formation of the ALS Foundation breached a provision of the contract or that a breach is imminent. None of the aforementioned acts violates the Agreement. Paragraph 1.2 of the Agreement requires that "[t]he purpose, objectives and business of The Chapter . . . be conducted under the name of ALS of Michigan, Inc." Pl. Exh. 2. The mere formation of ALS Foundation with the same stated objectives as ALS of

18

Michigan does not violate this provision absent evidence that the Chapter is conducting the same business under ALS Foundation.  However, Ms. Kahn's unrefuted testimony is that ALS Foundation is defunct.  With regard to the strategic planning memo, the means by which ALS of Michigan states that it plans to meet its objective of serving the entire state is to work with the Western Michigan Chapter to determine activities that can be done collectively.  There is no indication that ALS of Michigan intends to act in a manner contrary to its contractual obligations.

ALSA failed to establish a likelihood of success on this claim.

**B.    IRREPARABLE HARM**

**i.    Trademark Infringement**

If trademark infringement is proven, irreparable harm is presumed. *DaimlerChrysler v The Net Inc.,* 388 F.3d 201, 208 (6th Cir. 2004).  For the reasons stated above, ALSA stated a *prima facie* claim of trademark infringement during the June and September fund-raisers.  Therefore, irreparable harm has been established with regard to ALS of Michigan's use of the Walk to D'Feet logo.  It has also been established with regard to ALS of Michigan's contemporaneous use of the ALS and Walk 'N Roll logos.

**ii.    Encroachment of Territory**

"[A] plaintiff's harm is not irreparable if it is fully compensable by money damages.  However, an injury is not fully compensable by money damages if the nature of the plaintiff's damages is difficult to calculate."  *Basicomputer Corp. v Scott,* 973 F.2d 507, 511 (6th Cir. 1992).  Loss of goodwill is recognized as legitimate harm which is not

19

readily quantified.  *Id* at 511-512.  "The impending loss or financial ruin of [a] business [also] constitutes irreparable injury."  *Performance Unlimited*, 52 F.3d at 1382.

ALSA states that ALS of Michigan's alleged actions are causing the Western Michigan Chapter to lose goodwill and jeopardizes its very existence.  However, there is no actual evidence that patients and/or donations have been solicited.  ALSA has not established irreparable harm on this claim.

### iii.    ALS Foundation

Because there is no proof that ALS of Michigan breached the Affiliation Agreement, there is no basis for finding irreparable harm.  Moreover, ALSA has not established why the financial damages it anticipates could not be adequately compensated with a monetary award.  *See Basicomputer,* 973 F.2d at 511.

## C.    BALANCE OF HARMS AND PUBLIC INTEREST

For the trademark infringement and breach of contract claims, the balance of harms and public interest favors ALSA.  Continued infringement of ALSA's trademarks and contemporaneous breach of the Agreement will indisputably be harmful to ALSA's interest in both.  And, as ALSA asserts, public interest supports enforcement of contracts and protection of trademarks.

ALSA has not, however, established that ALS of Michigan has solicited patients or donations outside its territory or that there is any evidence to support ALSA's suspicions about ALS of Michigan's motive in forming the ALS Foundation. Consequently, the balance of harms and public interest for these claims favor ALS of Michigan.

20

**IV.     CONCLUSION**

ALSA's motion is **GRANTED IN PART.**  ALS of Michigan is enjoined from

using the Walk to D' Feet logo as long as it continues to refuse to execute the

Memorandum.  ALS of Michigan is also enjoined from using the ALS logo

contemporaneously with the Walk 'N Roll logo.

In all other respects, ALSA's motion is **DENIED**.

**IT IS SO ORDERED.**

s/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  September 8, 2006

---

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
September 8, 2006.

s/Linda Vertriest_____
Deputy Clerk

---